**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4088

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

CURTIS DAVIS,

        Defendant – Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, District Judge. (3:19-cr-00065-GMG-RWT-3)

Argued: October 24, 2023                      Decided: January 25, 2024

Before DIAZ, Chief Judge, TRAXLER, Senior Circuit Judge, and Jamar K. WALKER, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Walker wrote the opinion, in which Chief Judge Diaz and Senior Judge Traxler joined.

**ARGUED:** Robert Cameron Stone, Jr., ROBERT C. STONE, JR. PLLC, Martinsburg, West Virginia, for Appellant. Eleanor F. Hurney, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

WALKER, District Judge:

As officers were executing a search warrant inside a residence, they observed the appellant, Curtis Davis, attempt to place baggies of controlled substances into an air vent. Officers searched Davis and discovered more baggies of controlled substances. They also seized firearms, cash, cell phones, and additional controlled substances from the residence. Davis was arrested and charged with drug and firearm offenses. He filed a motion to suppress, arguing that the search warrant was not supported by probable cause. The district court denied Davis's motion. For the reasons stated herein, we affirm.

I.

On June 11, 2019, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") were surveilling Ray's Guns, a firearms store. JA38. At some point prior, ATF learned that an individual named Derrick Hough had purchased 15 firearms in the preceding year. *Id.* ATF also discovered that Hough was planning to pick up three pistols he had previously purchased at Ray's Guns. *Id.* The same day he acquired those three pistols, Hough also bought an additional pistol. *Id.* To complete both transactions, Hough filled out ATF Form 4473 and provided an "inaccurate address." *Id.* When purchasing the firearms, Hough drove a rental car and paid in cash, which ATF believed "to be indicative of potential firearms trafficking." *Id.*

After Hough departed from Ray's Guns on June 11, 2019, he drove to the parking lot of a Sheetz gas station. JA38. Agents saw a man "briefly" enter and then exit Hough's vehicle. *Id.* Hough drove away from Sheetz and to the residence that would later become the target of the challenged search warrant (hereinafter, "the residence"). *Id.* ATF agents

2

pulled in behind Hough's vehicle and turned on their emergency lights, at which point Hough exited the driveway and "almost" struck ATF vehicles. *Id.* ATF agents followed Hough with their emergency lights and sirens on, but Hough continued driving. *Id.* Eventually, Hough struck an ATF vehicle and was stopped. JA38–39.

Orville Darby, who had previously been convicted of a felony, was with Hough in the car. JA39. The three pistols that Hough had purchased at Ray's Guns were behind the driver's seat and "within arm's reach" of Darby. *Id.* Agents also discovered "approximately $2,200 in US currency" on Darby's person, "approximately $100 in cash ripped to pieces on the front passenger floorboard," and "[t]wo ripped plastic baggies" beside the driver's seat. *Id.* Agents "believe[d] this to be indicative of drug distribution." *Id.*

Hough and Darby were arrested and transported to the county sheriff's office. JA39. While in custody, Hough consented to an interview and stated that "seven of the firearms he purchased within the last year were for other people." *Id.* In addition, he indicated that "a couple of the firearms were still present" at the residence, that they were in Darby's possession, and that he and Darby had moved the firearms to the residence earlier that day. *Id.* Hough also stated that he was moving into the residence "soon." *Id.* An inventory search of Darby's person revealed "a handwritten receipt received by [Darby] for rent dated June 4, 2019 in the amount of $600.00." *Id*.

The attachment to the search warrant application described several categories of items to be searched for and to be seized, including: "[f]irearms, ammunition, controlled substances and other items criminally possessed," "[c]ellular telephones," "[a]ny other weapons and firearms," and "[e]lectronic devices and storage media, including desktop

3

computers, laptop computers, mobile devices, tablets, and other internet accessible electronic communication devices." JA36.

A state magistrate signed the search warrant on June 12, 2019. JA34–35. ATF agents and other law enforcement officers executed the warrant at the residence on the same day. JA30. After knocking on the door and announcing their presence, officers observed an individual, later identified as Davis, "come to the kitchen door then run back into the residence." *Id.* Officers breached the door, entered the residence, and observed two additional individuals whom the police identified as "two females in the back bedroom." *Id.* Officers detained all three individuals while they searched the residence. *Id.* One ATF agent observed Davis, who was seated on the floor of the living room, "attempting to remove baggies of controlled deadly substances (CDS) into the HVAC return on the floor." *Id.* Agents searched Davis and discovered "two additional plastic bags containing smaller baggies of a white rocklike substance," which later tested positive for cocaine base, and $2,652 in "assorted U.S. Currency." JA30–31.

Agents searched the residence further and identified one of the bedrooms as Davis's "by his wallet and identification card on the dresser." JA31. The room also contained "male clothing items." *Id.* Officers found in the room "[a] pistol grip shotgun loaded with five shotgun rounds, U.S. Currency, and a large bag of CDS to include Heroin, Cocaine Base, and Cocaine HCl." *Id.* Three cell phones were also seized "from the residence." JA32. Davis indicated that one of the recovered cell phones, a black iPhone, belonged to him. *Id.* ATF subsequently sought, and was granted, a warrant to search the contents of the seized devices, including Davis's phone. JA85–99.

4

On December 3, 2019, Davis was charged with (1) conspiracy to distribute and to possess with intent to distribute heroin, cocaine hydrochloride, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; (2) possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). JA13–21.

Davis moved to suppress the evidence seized during the search, arguing that the affidavit supporting the search warrant (1) lacked probable cause that evidence of a crime would be found at the residence, (2) lacked probable cause to search for and seize "controlled substances," and (3) lacked probable cause to search for and seize "[c]ellular telephones." JA22–28 (motion), JA36 (Attachment A to search warrant application). The district court held a hearing on the motion. JA100–226.[1] At the court's request, the parties filed supplemental briefs. JA227–36. The district court denied Davis's motion in a written opinion. JA237–46.

Following the district court's denial of his motion, Davis entered a conditional plea to one count of the indictment—possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1)—and reserved his right to appeal the court's denial of his motion to suppress. JA247–51. The district court entered judgment, JA340–46, and Davis appealed, JA347. We have jurisdiction under 28 U.S.C. § 1291.

---

[1] The hearing included evidence and argument related to other motions which are not before us on this appeal. Proceedings directly relating to Davis's motion to suppress can be found at JA192–226.

5

II.

The Fourth Amendment's reasonableness clause "generally requires the obtaining of a judicial warrant" before law enforcement officers undertake a search. *Riley v. California*, 573 U.S. 373, 382 (2014) (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). A warrant must be supported by probable cause, which requires a magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Reviewing courts should afford a magistrate's determination of probable cause "great deference, declining to defer only when the finding was not supported by substantial evidence in the record or when the basis of the determination was a knowingly or recklessly false affidavit." *United States v. McLamb*, 220 F. Supp. 3d 663, 669 (E.D. Va. 2016), *aff'd*, 880 F.3d 685 (4th Cir. 2018); *see also Gates*, 462 U.S. at 238 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.") (quotation marks omitted, alterations accepted).

We review factual findings underlying a motion to suppress for clear error and legal determinations de novo. *United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012); *see also United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004) ("Although we review de novo the denial of the motion to suppress by the district court, the determination of probable cause by the issuing magistrate is entitled to great deference from this court."). When

reviewing the denial of a motion to suppress, we review the evidence in the light most favorable to the government. *Davis*, 690 F.3d at 233.

### III.

On appeal, Davis raises three challenges to the validity of the search warrant. He argues that the affidavit supporting the search warrant did not establish (1) probable cause that evidence of a crime would be found at the residence, (2) probable cause to search for and seize controlled substances, or (3) probable cause to search for and seize cell phones. We address each argument in turn.

### A.

First, Davis argues that the affidavit failed to establish probable cause to believe that evidence of a crime would be found at the residence. He argues that "[b]ut for the uncorroborated claims of Mr. Hough, there is nothing to link the . . . residence to any criminal activity alleged against Mr. Darby." Appellant's Br. at 14. For multiple reasons, we disagree.

This was not a situation where the source of information was a confidential informant, where we have recognized that corroboration often serves a critical role in "establishing the anonymous informant's reliability." *United States v. Gondres-Medrano*, 3 F.4th 708, 715 (4th Cir. 2021). Instead, this was the case of a known informant with unknown credibility engaging in a post-arrest interview. Because an informant in such circumstances "exposes himself to possible criminal prosecution or other consequences for giving false information, his reliability is enhanced, and less corroboration is required as compared to an anonymous informant." *Id.* at 716.

7

With this standard in mind, it is clear that Hough's admissions were sufficiently corroborated. We note that law enforcement need not corroborate every statement an individual makes to rely on the information that individual provides—corroboration of some statements suggests that the rest were also true. *See Gates*, 462 U.S. at 244; *see also, e.g.*, *Spinelli v. United States*, 393 U.S. 410, 427 (1969) (White, J., concurring) ("[B]ecause an informant is right about some things, he is more probably right about other facts, usually the critical, unverified facts.").

Hough's statements generally related to his firearms purchases ("[Hough] advised that seven of the firearms he purchased within the last year were for other people.") and to Darby's residence ("Hough stated that a couple of the firearms were still present at [the residence] in the possession of Darby," that "he moved the firearms with Darby to [the residence] today," and that "he was moving into the residence with Darby soon."). JA39.

Hough's claim that he had purchased firearms for others is corroborated by substantial evidence: ATF records showed that Hough had purchased 15 firearms in the last year, JA38; he used an inaccurate address on ATF background check forms on more than one occasion, *id*; he used a rental car to pick up the firearms, *id*; he paid cash for the firearms, *id*; he attempted to flee, *id*; and his vehicle contained three firearms, $2,200 in cash, and $100 in ripped bills, JA39.

Hough's implication of Darby's residence in potential criminal conduct was also corroborated by other evidence: Darby was in the car with Hough when Hough picked up three firearms, *id*; Darby possessed a receipt for rent dated June 4, 2019, *id*; and Hough

8

drove with Darby to the residence with firearms in the car before ATF agents attempted a stop, JA38. These facts are more than sufficient to corroborate Hough's statements.

Because Davis challenges the sufficiency of the warrant on the basis that the affidavit failed to establish that evidence of "*any* criminal activity" would be found at the residence, Appellant's Br. at 14 (emphasis added), we need only find that the magistrate's determination of probable cause was supported by a substantial basis for at least one offense. Examining the "totality of the circumstances," *Gondres-Medrano*, 3 F.4th at 717, including Hough's statements, we find that the magistrate had a substantial basis for finding probable cause to believe that evidence of at least firearms-related offenses would be found at the residence.

Hough mentioned in his interview that he and Darby had moved several firearms to the residence earlier that day. JA39. This, coupled with ATF's confirmation that Darby was a prohibited person and owned the residence, *id.*, established probable cause to believe that evidence of a crime—possession of a firearm by a prohibited person—would be found at the residence.

For the foregoing reasons, we find that the magistrate had a substantial basis for finding probable cause to believe that evidence of a crime would be found at the residence.

B.

Second, Davis argues that "there is nothing [in the search warrant affidavit] indicating that drugs would be located at [the residence.]" Appellant's Br. at 10–11. As the district court correctly observed, this is "admittedly a closer question." JA243. Because we are "entitled to affirm on any ground appearing in the record, including theories not relied

9

upon or rejected by the district court," *United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015) (quoting *Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003)), we decline to reach the question of whether the search warrant affidavit supplied the probable cause necessary to search for and seize controlled substances. We hold instead that the controlled substances at issue were properly seized either incident to Davis's arrest or because they were in plain view of the officers conducting the search.[2]

Because we held above that the warrant was valid at least as to evidence of firearms offenses, officers were lawfully present in the residence when they observed Davis attempting to place baggies of controlled substances into an air vent. These controlled substances were lawfully seized because they were in plain view and because their incriminating nature was immediately apparent. *Horton v. California*, 496 U.S. 128, 136 (1990) (the plain view exception applies when an item is in plain view and its "incriminating character" is "immediately apparent") (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)).

For similar reasons, the controlled substances found in Davis's bedroom were also lawfully seized. The officers executing the search warrant were entitled to search for evidence of firearms offenses, including firearms and ammunition. The controlled substances found in Davis's bedroom were in a "large" bag and consisted of approximately 42 grams of cocaine base, 27 grams of cocaine hydrochloride, and 24 grams of suspected

---

[2] The government raised these arguments before the district court, JA228–230, and the district court agreed that the motion to suppress should be denied on these alternative grounds, JA244–45.

heroin. JA32. Construing the evidence in the light most favorable to the government, we conclude the bag was in a location that officers were entitled to search.

Finally, the substances found on Davis's person were lawfully seized incident to Davis's arrest. Officers were entitled to search Davis's person after they observed him attempting to place baggies of controlled substances into an air vent. *United States v. Currence*, 446 F.3d 554, 557 (4th Cir. 2006). That search revealed two additional baggies of "a white rocklike substance." JA31. Although the record does not describe exactly when Davis was formally placed under arrest, searches incident to arrest need only be "'substantially contemporaneous with the arrest'" and "can occur before an arrest is actually made" as long as the fruits of the search are not used to justify the arrest. *Currence*, 446 F.3d at 557 (quoting *Stoner v. California*, 376 U.S. 483, 486 (1964)). At the time officers searched Davis, he had already been detained and handcuffed, JA31, 317, and officers had observed him attempting to conceal controlled substances, JA30. As a result, law enforcement had probable cause to arrest and search Davis.

For the foregoing reasons, we affirm the district court's denial of Davis's motion to suppress the controlled substances.

C.

Finally, Davis argues that the search warrant affidavit failed to establish probable cause to seize cell phones. Appellant's Br. at 12 ("The affidavit makes no reference to evidence of a crime being located on a cellular phone at [the residence]."). Davis is correct that the search warrant affidavit does not reflect any evidence that Davis, Hough, or Darby used a cell phone in connection with any criminal activity. Again, we are entitled to affirm

11

the district court on any basis appearing in the record before us. *Flores-Granados*, 783 F.3d at 491. Here, we find that Davis's cell phone was lawfully seized as an instrumentality of drug trafficking found in plain view.[3]

At the outset, we reject the government's argument that Davis's cell phone was lawfully seized incident to his arrest. The record indicates only that the cell phone was "recovered from the residence." *See, e.g.*, JA32. As the government effectively conceded at oral argument, the record does not establish that Davis's phone was on his person or in an area within his immediate control. *See United States v. Ferebee*, 957 F.3d 406, 418 (4th Cir. 2020). Absent such evidence, we cannot find that Davis's cell phone was lawfully seized incident to his arrest.

To satisfy the plain view exception, "the government must show that: (1) the officer was lawfully in a place from which the object could be viewed; (2) the officer had a lawful right of access to the seized items; and (3) the incriminating character of the items was immediately apparent." *Davis*, 690 F.3d at 233 (internal quotations omitted); *see also Horton*, 496 U.S. at 136. First, because we conclude that the search warrant for the residence was valid at least as to firearms, the first prong is satisfied.

---

[3] The government raises this argument in cursory fashion, asserting that "officers had probable cause to believe that the phone contained evidence of controlled substance trafficking" because they had observed Davis attempting to place baggies of controlled substances into a vent. Appellee Br. at 19. The government then wrongly concludes that this supported seizing Davis's phone incident to his arrest. Although the government's conclusion is wrong for the reasons we explain below, its analysis is correct: Because officers discovered substantial evidence indicating that Davis was engaged in drug trafficking, they lawfully seized his cell phone as an instrumentality.

12

Second, the officers had lawful right of access to the cell phone. Although we do not know the precise location of Davis's cell phone at the time it was found and seized, we know that it was an iPhone, that it was found in the residence, and that Davis ultimately identified the phone as belonging to him. JA32. The original warrant in this case would have required law enforcement to search in small areas and containers for items such as ammunition. It is axiomatic that in conducting searches of this nature, law enforcement officers may observe other items that can be stored in or seen from these areas, such as cell phones. Critically here, when they encountered these devices, law enforcement officers merely seized but did not search them. Construing the evidence in the light most favorable to the government, we find that Davis's cell phone was necessarily in a location that police were entitled to search.

Lastly, given the context in which the cell phone was found, its incriminating character was immediately apparent. "Seizure of everyday objects in plain view is justified where the officers have probable cause to believe that the objects contain or constitute evidence." *United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017). "Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises." *Riley*, 573 U.S. at 401. And, as we have previously observed, "just as it is sometimes reasonable to believe that a suspect's home may contain evidence of their crimes, it might be reasonable to believe that his cellphone will . . . [a]t least . . . for crimes like drug trafficking that involve coordination." *United States v. Orozco*, 41 F.4th 403, 411 n.9 (4th Cir. 2022).

Here, given the substantial quantities of controlled substances that were found on Davis's person and in his bedroom, JA32, the extent to which they were packaged for distribution, JA89–90, the evidence of drug trafficking found elsewhere in the common areas of the residence, JA91, and the known and obvious connection between drug trafficking and the use of cell phones, *Orozco*, 41 F.4th at 411 n.9, the officers executing the search had "probable cause to associate the [phone] with criminal activity." *United States v. Runner*, 43 F.4th 417, 421 (4th Cir.), *cert. denied*, 143 S. Ct. 532 (2022) (quoting *Texas v. Brown*, 460 U.S. 730, 738 (1983)). As a result, we hold that law enforcement lawfully seized Davis's cell phone as an instrumentality of drug trafficking found in plain view.[4]

There are several important limitations to our holding. First, we do not hold that cell phones in plain view may *always* be seized as instrumentalities of a crime. The nature of the alleged crime and the totality of the evidence are critical considerations. The government's seizure of Davis's phone was only justified because officers found the phone together with substantial evidence of drug trafficking—a crime that inherently involves coordination between multiple individuals.

Our analysis in *Runner* is instructive. There, the defendant moved to suppress evidence seized during a warrantless search of his vehicle undertaken by officers after they observed a glass stem pipe in the console of his car. *Runner*, 43 F.4th at 418. The district

---

[4] Although the facts of this case might support application of the good faith exception to the warrant requirement, we decline to consider whether that exception applies because the government failed to raise it in its brief or before the district court.

14

court denied his motion, and we affirmed. *Id.* We explained that a glass stem pipe is not an "everyday object[] that *could be* put to illegal ends." *Id.* at 422 (emphasis in original). Rather, its "*predominate* purpose" is "to smoke illegal substances," making it reasonable for a police officer to believe that it was evidence of a crime. *Id.* (emphasis in original). But we explained that even "[a] pipe alone would not necessarily trigger the plain view exception" and described the need for additional evidence linking the pipe to criminal use to establish probable cause. *Id.* at 422–23 (collecting additional cases where we have upheld plain view searches involving paraphernalia where there was "additional evidence or indicators that contributed to a finding of probable cause").

A cell phone is quite unlike a glass pipe: A phone is an everyday object, like a kitchen scale, whose "predominate purpose" is not criminal. *Runner*, 43 F.4th at 422. And a scale found together with evidence (*e.g.*, bank records) of a crime not typically associated with the use of scales (*e.g.*, tax fraud) does not adopt an incriminating character. But a scale found together with small baggies, large quantities of controlled substances, and firearms[5] can adopt an incriminating character. So too can a cell phone. But for a cell phone to be seized in plain view, the "additional evidence or indicators" of criminality have significant work to do to establish probable cause. *Id*.

In this case, Davis's phone was found in the residence along with, *inter alia*, substantial quantities of controlled substances that were packaged for distribution, cash,

---

[5] We have previously observed that firearms are "tools of the drug trade and are commonly recognized articles of narcotics paraphernalia." *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999).

15

firearms, and ammunition, all found on Davis's person or in his bedroom. This evidence provided law enforcement with sufficient probable cause to seize Davis's cell phone.

Further, the government does not argue, and we do not hold, that the warrant lawfully authorized the officers to search the contents of Davis's phone. Indeed, "[c]ourts have drawn a distinction between the plain view seizure of a container and the subsequent search of that container, because its seizure under the plain view doctrine 'does not compromise the interest in preserving the privacy of its contents, while its search does.'" *United States v. Williams*, 41 F.3d 192, 197 (4th Cir. 1994) (quoting *Horton*, 496 U.S. at 141 n. 11). Thus, to search the phone, the government properly sought and received a second warrant from a federal magistrate judge. JA82–99. The government's federal warrant application included additional evidence related to probable cause and a particularized list of the electronic data to be searched. *Id.*

\* \* \*

For the foregoing reasons, we conclude that (1) the warrant to search the residence was valid, (2) the controlled substances were properly seized either incident to Davis's arrest or because they were in plain view of the officers conducting the search; and (3) Davis's cell phone was lawfully seized as an instrumentality of drug trafficking found in plain view. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*

16